IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EDWARD PETER NEWPORT, 01047722, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No.  3:13-CV-3478-P |
| | ) | (Consolidated with |
| WILLIAM STEPHENS, Director, Texas | ) | No. 3:13-CV-3479-P |
| Dept. Of Criminal Justice, Correctional | ) | No. 3:13-CV-3480-P) |
| Institutions Division, | ) | |
| Respondent. | ) | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

This case has been referred to the United States Magistrate Judge pursuant to 28 U.S.C.

§ 636(b) and a standing order of reference from the district court.  The Findings, Conclusions and

Recommendation of the Magistrate Judge are as follows:

## I.  Procedural Background

Petitioner was convicted of aggravated sexual assault of a child and two counts of sexual

assault of a child.  *State of Texas v. Edward Peter Newport*, Nos. F00-29440-RT, F00-29454-QT

and F00-29456-QT (283rd Jud. Dist. Ct., Dallas County, Tex., Sept. 1, 2000).  He was sentenced

to ninety-nine years on the aggravated sexual assault conviction, and twenty years on each of the

sexual assault convictions.

On May 26, 2009, the Fifth District Court of Appeals affirmed the convictions in an out-

of-time appeal.  *Newport v. State*, Nos. 05-08-01008-CR, 05-08-01009-CR and 05-08-01010-CR,

2009 WL 1449374 (Tex. App. – Dallas 2009, pet. ref'd).  On November 25, 2009, the Court of

Criminal Appeals refused Petitioner's petitions for discretionary review. PDR Nos. 0997-09, 0998-09 and 0999-09.

On December 29, 2010, Petitioner filed state petitions for writ of habeas corpus challenging each of his convictions. *Ex parte Newport*, Application Nos. 66,526-05, -06, -07. On August 21, 2013, the Court of Criminal Appeals denied the petitions without written order.

On August 26, 2013, Petitioner filed this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He argues:

1.     He received ineffective assistance of counsel when counsel:

    a.     failed to have a command of the facts and law at voir dire;

    b.     failed to perform a pretrial investigation;

    c.     failed to object to the opening statement;

    d.     failed to question the victim about her marriage;

    e.     failed to subpoena witnesses;

    f.     failed to object to the victim's testimony about a videotape;

    g.     failed to object to the outcry witness;

    h.     failed to cross-examine Jonathan Babilonia and impeach him;

    i.     failed to file a motion to suppress;

    j.     failed to hire an expert;

    k.     failed to object to extraneous offense testimony;

    l.     failed to cross-examine the victim;

    m.     failed to require the state to elect dates;

    n.     failed to request a recess for a physical examination of Petitioner;

      o.      failed to object and preserve error regarding a lesser included offense;

      p.      failed to call witnesses at punishment; and

      q.      failed to impeach C.G. at punishment;

2.      The trial court erred when it:

      a.      allowed a venire member to ask defense counsel a question;

      b.      allowed the prosecution to show Petitioner's home video to the jury;

      c.      allowed extraneous offense testimony;

      d.      overruled the defense objection to the jury charge;

      e.      failed to require that the prosecution comply with *Brady*;

      f.      failed to allow a lesser included offense; and

      g.      overruled the defense objection to testimony of C.G.;

3.      The prosecutor committed misconduct by interjecting her personal opinion that Petitioner destroyed a tape;

4.      He received ineffective assistance of appellate counsel when counsel:

      a.      failed to present an out-of-time motion for new trial;

      b.      failed to include legal and factual sufficiency as grounds on appeal;

      c.      failed to challenge the search warrant; and

      d.      failed to cite cases to support his claim that the trial court erred in denying his motion for mistrial; and

5.      The state appellate court erred in overruling the grounds presented for review.

On February 6, 2014, Respondent filed his answer. On April 17, 2014, Petitioner filed a reply. The Court now determines the petition should be denied.

## II.  Factual Background

The following factual background is taken from the opinion of the Fifth District Court of

Appeals.

L.L. and T.B. are sisters, and were acquainted with appellant because their older sister once dated him. When T.B. was thrown out of the house, she lived with appellant and his fiancee for a while. T.B. later married Jonathan Babilona, and L.L. came to live with them.

L.L. initiated a complaint against appellant in October or November 1999. Detective Val Bragg investigated the complaint and appellant was subsequently arrested and charged by indictment with the aggravated sexual assault of L.L. when she was younger than fourteen. When Detective Bragg interviewed T.B. after appellant was arrested, she told him appellant had also sexually assaulted her. T.B. gave a statement and typed it herself. Detective Bragg obtained a warrant and appellant's place of business was searched. Adult pornographic videotapes and magazines as well as a pornographic videotape of appellant and his fiancé were recovered from the search. The police also retrieved a medical examiner's badge that they subsequently learned had been stolen. Appellant was charged in two separate indictments with aggravated sexual assault of T.B. when she was under 14 years of age and sexual assault of T.B. when she was older than fourteen. Appellant pleaded not guilty to the two aggravated sexual assault charges and the sexual assault charge and the three cases were tried together before a jury.

L.L. testified at trial and described the incident that precipitated her complaint. According to L.L., when she was approximately thirteen, appellant sexually assaulted her at his place of business. L.L. stated that she and appellant were alone and appellant showed her a pornographic video. Appellant then disrobed and removed L.L.'s clothes. Appellant put his hands on L.L.'s chest and touched "her private part between her legs." Appellant then put L.L. on a table and attempted to penetrate her vagina with his penis. L.L. told appellant he was hurting her. After the assault, L.L. went to the restroom and noticed she was bleeding. When T.B.'s husband picked L.L. up from the shop, he noticed a couple of drops of blood in the restroom. Sometime after the incident, L.L. told T.B.'s husband what had occurred. The next day, T.B. and her husband took L.L. to the hospital and a complaint was filed against appellant.

T.B. also testified that appellant began sexually assaulting her when she was thirteen. T.B. described a number of incidents in detail and testified that appellant made her perform fellatio on him on a number of occasions. On another occasion, appellant videotaped T.B. while she performed oral sex on him. T.B. recalled that afterwards appellant played a portion of the videotape showing his fiance performing fellation on him and then fast forwarded the video to show her the recording he made of her performing the same act. T.B. stated she could not recall the number of times appellant

had sexually assaulted her because it occurred frequently over a number of years. According to T.B., appellant not only forced her to perform oral sex on him a number of times, but also inserted his finger into her vagina, tried to insert his penis into her anus, and rubbed his penis against her vagina. T.B. described one occasion when appellant sexually assaulted her at his shop and penetrated her sexual organ with his penis.

Detective Bragg testified about his investigation and the results of the search. During Detective Bragg's testimony, appellant's counsel raised an issue about the items seized in the search. The jury was excused and the trial court conducted a hearing. Defense counsel indicated "thus far" he was objecting to all of the evidence found on the premises on the grounds of "relevancy." There was an extensive discussion between the court, the State, and defense counsel concerning the adult pornographic videotapes and magazines that were seized. At the conclusion of the hearing, prior to ruling, the court asked defense counsel, "You still object to all of these things?" Defense counsel replied "I am objecting under Texas Rules of Evidence 403 to the admissibility of the tapes that the court has ruled are going to be shown to the jury . . . ." The court ruled that some of the videos would be admitted into evidence and sustained defense counsel's objection to the remaining videos.

Appellant testified and denied all of the accusations against him. The jury found appellant guilty of the aggravated sexual assault of L.L., guilty of sexual assault of T.B. as a lesser included offense of the charge of aggravated sexual assault, and guilty of the remaining charge of sexual assault of T.B. After the return of the verdict, the court recessed for lunch. Despite the court's instruction to return after lunch, appellant did not return to the courtroom. Consequently, the punishment phase of the trial commenced in appellant's absence.

When T.B. returned to the witness stand, the court had to admonish members of appellant's family seated in the courtroom not to make faces or threatening gestures while the witness testified. T.B. became so upset she was unable to complete her testimony. At some point, appellant's family left the courtroom.

The State called C.G. as a witness. C.G. testified that she met appellant at a nightclub and he had taken her to his home and raped her. The prosecutor elicited testimony from the witness that appellant had been indicted and the case was pending in Red Oak. Defense counsel objected after the question was asked and the answer had been given. At the conclusion of the punishment phase, the jury sentenced appellant to twenty years' imprisonment and a $10,000 fine on each of the sexual assault convictions and ninety-nine years' imprisonment and a $10,000 fine on the aggravated sexual assault conviction. Appellant remained a fugitive until he was recaptured several months later. Appellant was formally sentenced by the court subsequent to his capture.

*Newport*, 2009 WL 1449374, at *1-2.

### III.  Discussion

**1.    Standard of Review**

The pertinent terms of the Antiterrorism and Effective Death Penalty Act of 1996 (the

AEDPA), 28 U.S.C. § 2254 provide:

(d)    An application for writ of habeas corpus on behalf of a person in custody pursuant
to the judgment of a state court shall not be granted with respect to any claim that
was adjudicated on the merits in State court proceedings unless the adjudication of
the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the
Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of
the facts in light of the evidence presented in a State court proceeding.

*See* 28 U.S.C. § 2254(d).  Under the "contrary to" clause, a federal habeas court may grant the

writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the

United States Supreme Court on a question of law or if the state court decides a case differently

from the United States Supreme Court on a set of materially indistinguishable facts.  *Williams v.*

*Taylor*, 529 U.S. 362, 380-84 (2000).  Under the "unreasonable application" clause, a federal

court may grant a writ of habeas corpus if the state court identifies the correct governing legal

principle from the United States Supreme Court's decisions, but unreasonably applies that

principle to the facts of the prisoner's case.  *Id.*

**2.    Ineffective Assistance of Counsel**

Petitioner claims he received ineffective assistance of counsel.  To sustain a claim of

ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was

deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive

Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the

Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and

"every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466

U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance." *Id.*

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such

prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would

have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309,

312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different

outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must

demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.*

(quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### A.    Command of the Law and Facts

Petitioner claims his counsel was ineffective for failing to have a command of the law

and facts during voir dire. To support his claim, he states that a venire member questioned

whether this was counsel's first case of this kind. The venire member stated that counsel seemed

"kind of tense." (Trial Tr. Vol. 3 at 163.) Counsel responded that this was not his first case of

this kind and stated:

> [T]his is a very important case. And I would merely ask you, is there something about
> my behavior that you feel is going to affect the way you're going to view this case?

(*Id.* at 164.) Counsel therefore questioned this venire member to ensure that her reaction to him

would not prejudice the Petitioner. Petitioner also cites the record where his counsel mis-spoke

during voir dire when counsel asked a venire member is she could presume Petitioner to be

guilty. (*Id*. at 154.) The record shows counsel acknowledged that he mis-spoke and he corrected his question to ask if the venire member could presume Petitioner to be not guilty. (*Id*.) Petitioner has failed to show his counsel was ineffective because he did not know the law or facts of the case.

### B.    Pre-Trial Investigation

Petitioner claims his counsel was ineffective because he failed to perform a pre-trial investigation. He claims his counsel failed to (a) request funds to hire a private investigator; (b) investigate the school and medical records of L.L.; (c) investigate the marriage of Jonathan Babilonia and T.B.; (d) interview Casandra Newport; and (e) call certain witnesses to testify.

#### (i) Calling Witnesses

Petitioner states his counsel should have called his brother, Gerard Newport, and a contractor named Carlos Austell to testify regarding his business premises. Petitioner states certain pornographic videos, magazines and photographs were seized from his brother's portion of the business premises and that this evidence should have been excluded from trial. He claims Carlos Austell would testify that he installed a wall between Petitioner's portion of the premises and his brother's portion of the building, so that the two businesses were separate.

The record shows there was a lengthy discussion of this evidence outside the presence of the jury. Defense counsel argued that all evidence seized from Petitioner's brother's portion of the business should be excluded. (Trial Tr. Vol. 4 at 191.) Defense counsel told the court that Petitioner's brother was available to testify that his business was separate from Petitioner's business, and that a locked door separated the two businesses. (*Id*. at 196-97.) Officer Bragg testified that a door between the two businesses did not exist on the date of the search and

seizure. (*Id.* at 193.) Defense counsel offered to bring a contractor to court to testify as to the date he constructed the door between the two businesses. (*Id.* at 206-07.) The court determined that it was not necessary to receive testimony from Petitioner's brother, or from the contractor. (*Id.* at 209.) The court excluded all evidence from the brother's section of the business. (*Id.* at 218.) Petitioner has failed to show his counsel was ineffective.

Petitioner also claims his counsel should have called Petitioner's daughter, Cassandra Walker, to testify that Petitioner never sexually assaulted her. On state habeas review, Petitioner submitted an affidavit from Walker in which she stated that although she told Officer Bragg Petitioner had sexually assaulted her, she was abusing drugs at the time of her interview with Bragg, and Petitioner actually did not sexually assault her. *Ex parte Newport*, No. 66,526-07 at 63-64. Officer Bragg, however, did not testify that Petitioner sexually assaulted Cassandra Walker, nor did he testify that Walker or anyone else told him that Petitioner sexually assaulted Walker. Petitioner has failed to show his counsel was ineffective for failing to call this witness.

### (ii) School and Medical Records

Petitioner claims his counsel was ineffective for failing to investigate and subpoena the school and medical records of L.L. The record shows, however, that defense counsel entered L.L.'s school records into evidence, and the prosecution entered L.L.'s medical records into evidence. (Trial Tr. Vol. 5 at 90; Trial Tr. Vol. 4 at 233.) Further, on state habeas review, defense counsel stated he reviewed all school and medical records. *Ex parte Newport*, No. 66,526-07 at 194. Petitioner's claim is without merit.

### (iii) Marriage

Petitioner claims his counsel failed to investigate the marriage records of T.B. and

Jonathan Babilonia. He claims an investigation would show that T.B. and Babilonia were not

lawfully married. Petitioner's claim is conclusory. He submits no evidence that T.B. and

Babilonia were not lawfully married. This claim should be denied. *See Ross v. Estelle*, 694 F.2d

1008, 1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise

constitutional issues in habeas proceedings).

### (iv) Video-Tape

Petitioner claims his counsel was ineffective because he failed to investigate the search

and seizure of a video-tape from his house in Red Oak, Texas. Petitioner states his wife told

defense counsel that during a search of the Red Oak house, police confiscated a video-tape of her

performing oral sex on Petitioner. Petitioner states that Dallas County did not have jurisdiction

over this tape, since Red Oak is in Ellis County. The record shows that Petitioner's wife testified

there were two video-tapes of her performing oral sex on Petitioner, that one of the tapes was in

the Red Oak house, and that Red Oak police officers confiscated the tape. (Trial Tr. Vol. 5 at 99-

100.) Officer Fullerton from the Red Oak police department testified, however, that they did not

confiscate any pornographic videos from the Red Oak house and specifically did not confiscate a

video depicting Petitioner and his wife engaged in oral sex. (*Id.* at 101.) Additionally, Officer

Bragg testified that the video-tape of Petitioner and his wife engaged in oral sex that was

introduced at trial was seized from Petitioner's business address in Dallas County. (Trial Tr.

Vol. 4 at 204.) Petitioner has failed to show that any further investigation would have uncovered

evidence favorable to the defense.

### C.    Failure to Object

Petitioner claims his counsel was ineffective for failing to object to: (1) statements that

L.L. was mentally retarded; (2) T.B.'s testimony regarding a videotape; (3) the outcry witness;

(4) extraneous offense testimony; and (5) the lack of a lesser-included offense instruction.

### (i) L.L.'s Mental Retardation

Petitioner claims his counsel was ineffective for failing to object to the prosecutor's

opening statement that L.L. was mentally retarded, and to T.B.'s testimony that she received a

letter stating L.L. meets the requirement for mental retardation.  T.B. also testified that L.L. has a

severe hearing problem and that it is hard to understand her speech.  (Trial Tr. Vol. 4 at 91-92.)

Petitioner, however, has submitted no evidence that these statements were not accurate.  His

claim is conclusory and should be denied.

### (ii) Videotape

Petitioner claims his counsel was ineffective for failing to object to T.B.'s testimony that

Petitioner made a videotape showing her performing oral sex on him.  Petitioner states his

counsel should have argued that this incident occurred in Ellis County rather than Dallas County,

therefore the testimony was improper.  Petitioner has cited no non-frivolous argument for

excluding this testimony.  Counsel was not require to file frivolous motions.  *See United States v.*

*Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).

### (iii) Outcry Witness

Petitioner argues his counsel was ineffective for failing to object to Jonathan Babilonia as

L.L.'s outrcy witness.  Petitioner states L.L. told a school counselor about the sexual assault prior

to telling Babilonia, therfore Babilonia was not a proper outcry witness.

Under Texas law, outcry statements are statements about the offense that a child victim

makes to the first person, 18 years of age or older, who is not the defendant.  TEX. CODE CRIM.

PROC. art. 38.072 §2 (West 1999). The record shows L.L. testified that Jonathan Babilonia was the first person she told about the assault, and she did not tell her school counselor about the assault until after she told Babilonia. (Trial Tr. Vol. 4 at 127-29.) Petitioner has submitted no evidence that L.L.'s school counselor was the first person she told about the assault. Petitioner's claim should be denied.

### (iv) Extraneous Offense

Petitioner claims his counsel was ineffective for failing to object to evidence that police found a stolen medical examiner's badge at his business. Petitioner states the lack of an objection gave the jury the impression that Petitioner stole the badge. The record shows that outside the presence of the jury, Detective Bragg testified he determined the medical examiner's badge was stolen in a car burglary. (*Id.* at 205.) In the presence of the jury, however, the court did not allow Bragg to testify that the badge had been stolen. (*Id.* at 231-32.) Bragg only testified that he found the badge in Petitioner's desk at his place of business. (*Id.*) Petitioner's claim is without merit.

### (v) Lesser-Included

Petitioner claims his counsel should have objected to the lack of a lesser-included offense instruction on indecency with a child. (Pet. at 6A23.) Defense counsel, however, objected to the jury charge and requested a less-included offense instruction of indecency with a child in all three cases. (Trial Tr. Vol. 5 at 111.) The court denied counsel's motion. (*Id.* at 113.) Petitioner's claim should be denied.

### D.     Cross-Examine Witnesses

Petitioner claims his counsel was ineffective for failing to: (1) question T.B. about her

marriage to Jonathan Babilonia; and (2) cross-examine and impeach Jonathan Babilonia.

Petitioner argues that T.B. and Babilonia were married when T.B. was fifteen years old, and that Petitioner did not have intercourse with T.B. until after her marriage. Petitioner claims that once T.B. was married, she was emancipated and no aggravated sexual assault could occur. Petitioner has not only failed to show that no aggravated sexual assault could occur once T.B. was married, but T.B. also testified that Petitioner had sexual intercourse with her prior to her marriage to Babilonia. (Trial Tr. Vol. 4 at 21-40, 52-53.) T.B. also testified that Petitioner began sexually assaulting her when she was thirteen years old. (*Id.*) Petitioner's claim is without merit.

Petitioner claims his counsel should have impeached Jonathan Bablionia by showing that he married T.B. when she was fifteen years old, and he was eighteen or nineteen years old. Petitioner states that T.B. was therefore a minor when she and Babilonia began their sexual relationship. T.B. had already testified regarding the date of her marriage and her sexual relationship with Bablionia. (*Id.* at 21-53.) Petitioner's claim that his counsel should have questioned Babilonia about these dates is without merit.

### E.    Subpoena Witnesses

Petitioner claims his counsel was ineffective because he failed to subpoena Mandy Wood and "Jake" to testify. He states Mandy Wood would testify that she never saw Petitioner come out of his bedroom zipping up his pants. Wood submitted an affidavit on state habeas review in which she stated she did not tell Officer Bragg that she saw Petitioner coming out of a room in his house zipping up his pants, but that she told Officer Bragg she only heard this information from a friend, who heard it from another friend. *Ex parte Newport*, No. 66,526-07 at 66. Officer Bragg never testified regarding this information. Petitioner also does not identify who "Jake" is

or what his testimony would have been.  Petitioner's claims are without merit.

F.      **Motion to Suppress**

Petitioner claims his counsel was ineffective for failing to file a motion to suppress the evidence found at his business because the evidence was found in his brother's section of the building.  As discussed above, the court heard defense counsel's motion to suppress this evidence.  (Trial Tr. Vol 4 at 185-218.)  The court granted the motion as to any evidence that was found in the brother's portion of the building.  (*Id.* at 218.)  Petitioner's claim is without merit.

G.      **Expert**

Petitioner claims his counsel was ineffective for failing to hire a psychologist to examine him and determine whether he had any sexually deviant tendencies, or if he was a sexual predator.  Petitioner, however, has failed to show that such an expert would have testified favorably for the defense.  *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) ("for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show . . . that this testimony would have been favorable, [and] also that the witness would have testified at trial.").  Petitioner's claim should be denied.

F.      **Cross-Examine T.B.**

Petitioner claims his counsel was ineffective when he attempted to impeach T.B. with a transcript of her prior testimony, but neglected to first have her review the prior testimony.  The record shows the court instructed counsel to first allow T.B. to review the prior testimony.  (Trial Tr. Vol. 4 at 67.)  Petitioner has failed to show his counsel was ineffective or that he was prejudiced.

### G. Elect Dates

Petitioner claims his counsel was ineffective because he failed to require the prosecution to choose which dates each offense occurred.  The record shows that each indictment contained the dates for each alleged offense.  (Court Records Nos. F00-29440-RT, F00-29254-QT and F00-29456-QT at 2.)  The indictment for the sexual assault of L.L. stated the offenses occurred on or about November 12, 1999.  (*Id.*)  The indictment for the sexual assault of T.B. involving the penetration of T.B.'s anus and mouth by Petitioner's sexual organ stated the offenses occurred on or about May 1, 1996.  (*Id.*)  Finally, the indictment for the sexual assault of T.B. involving the penetration of T.B.'s sex organ by Petitioner's sex organ stated the offense occurred on or about May 1, 1997.  (*Id.*)  Petitioner's claims are without merit.

### H.    Recess

Petitioner states his counsel was ineffective for failing to request a trial recess to determine whether he was circumcised.  He states T.B. testified he was not circumcised, while he claims he is circumcised.  He states an examination of his genitals would have impeached T.B.'s credibility.  Petitioner, however, testified at trial that he was circumcised.  (Trial Tr. Vol. 5 at 88-89.)  Further, a video-tape of Petitioner and his fiancé involved in oral sex was admitted into evidence, and Petitioner admitted that video depicted his penis.  (*Id.* at 89.)  Petitioner's claim is without merit.

### I.    Witnesses at Punishment

Petitioner claims his counsel was ineffective for failing to call his son or any other witnesses during the punishment phase.  Petitioner states his son should have been called to rebut the testimony of C.G.  C.G. testified that in 1995 Petitioner sexually assaulted her at his home.

(Vol. 6 at 26-27.)  On state habeas review, Petitioner submitted an affidavit from his son in which his son stated he was present at the home on the date of the incident and he never saw Petitioner and C.G. go into the bedroom as C.G. testified.  *Ex parte Newport*, No. 66,526 -07 at 128-29.  Petitioner has failed to show there is a reasonable probability that this testimony would have changed the outcome of the trial.  C.G. testified that Petitioner's son was in his bedroom upstairs and Petitioner's bedroom was downstairs.  (Trial Tr. Vol. 6 at 27.)  She stated Petitioner's son never entered Petitioner's room during the assault.  (*Id.*)  Additionally, the punishment phase started after a lunch break.  Petitioner failed to return to court after the lunch break.  Although Petitioner's family did return to court after the break, the family left the courtroom prior to the defense presenting its case on punishment.  (*Id.* at 53.)  Petitioner has failed to submit any evidence that any other witness was available and willing to testify for the defense during punishment.  *See Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) ("hypothetical or theoretical testimony will not justify the issuance of a writ . . . .")  This claim should be denied.

3.    **Trial Error**

Petitioner claims the trial court erred when it: (1) allowed a venire member to ask defense counsel a question; (2) allowed a video-tape into evidence; (3) allowed evidence of an extraneous offense; (4) denied defense counsel's motion for a lesser-included offense instruction; (5) failed to require the prosecution to comply with *Brady v. Maryland*, 373 U.S. 83 (1963) and (6) allowed testimony of C.G. during punishment.

To prevail on a claim of trial error, a petitioner must show the error had a substantial and injurious effect or influence in determining the verdict.  *Brecht v. Abrahamson*, 507 U.S. 619,

637 (1983). A petitioner must establish that the error did more than merely affect the verdict. *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984). He must show the error rendered the trial as a whole fundamentally unfair. *Id.*

### A.    Venire Member

Petitioner claims the trial court erred when it allowed a venire member to ask questions of defense counsel, which made counsel appear incompetent. Petitioner, however, has failed to allege any violation of federal or state law in allowing venire members to ask questions of counsel during voir dire. This claims is without merit and should be denied.

### B.    Video-Tape

Petitioner claims the trial court erred by allowing into evidence a video-tape of Petitioner and his fiancé engaged in oral sex. The prosecutor argued the tape was admissible because it corroborated T.B.'s testimony that she saw the tape and that Petitioner also recorded her performing oral sex on Petitioner on the same tape. (Trial Tr. Vol. 4 at 219.) A video-tape recovered by police only showed Petitioner and his fiancé having oral sex, but on the tape the fiancé asked Petitioner why they needed to make a second tape. (*Id.*) The prosecution's theory was that Petitioner destroyed the first tape which showed Petitioner and his fiancé, and also showed Petitioner and T.B. Petitioner has failed to show the trial court's ruling was unreasonable or was contrary to clearly established federal law.

### C.    Extraneous Offense

Petitioner claims the court erred by allowing evidence of the 1996 extraneous offense involving C.G. that occurred in Red Oak, Texas. The record shows Detective Bragg testified regarding who was present during the search of Petitioner's business. Detective Bragg stated that

a Red Oak police officer was present and that the officer "had already been made aware of a previous case from '96." (Trial Tr. Vol. 4 at 223.) Defense counsel objected, the court sustained the objection and directed the jury to disregard the statement. (*Id.* at 224.) Petitioner's claim is without merit.

### D.    Jury Charge

Petitioner claims the court erred when it denied defense counsel's motion for a lesser-included offense jury instruction on indecency with a child. In a non-capital case, however, "the failure to give an instruction on a lesser included offense does not raise a federal constitutional issue." *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988); *Creel v. Johnson*, 162 F.3d 385, 390-91 (5th Cir. 1998) (same). This claim should be denied.

### E.    *Brady*

Petitioner claims the court erred by failing to require the prosecution to comply with *Brady*. He states the prosecution did not provide defense counsel with an inventory list created by police during the search of his business, and did not inform him that 24 pornographic magazines had been seized. To establish a *Brady* claim, Petitioner must show that the prosecution suppressed favorable, material evidence that was not discoverable through due diligence. *Brady*, 373 U.S. at 87. Evidence is "material" if there is a "reasonable probability" that the outcome of the trial would have been different had the evidence been disclosed to the defendant. *United States v. Freeman*, 164 F.3d 243, 248 (5th Cir. 1999).

In this case, Petitioner has failed to show that the police inventory or the pornographic magazines contained evidence favorable to the defense. Further, the pornographic magazines were excluded from evidence. (Trial Tr. Vol. 4 at 218.). Petitioner's claim is without merit.

### F.      Testimony of C.G.

Petitioner claims the court erred in allowing testimony by C.G. during punishment.  C.G.

testified that Petitioner sexually assaulted her, and that charges were pending against him in Red

Oak, Texas.  The Fifth Circuit has stated, however, that "there is no constitutional prohibition

under the Eighth or Fourteenth Amendments against the introduction of extraneous evidence at

the punishment phase and the Constitution does not require extraneous offenses to be proved

beyond a reasonable doubt."  *Parr v. Thaler*, 481 Fed. Appx. 872, 879 (5th Cir. 2012).

Petitioner's claim should be denied.

### 4.      Prosecutorial Misconduct

Petitioner claims the prosecutor committed misconduct when she stated her opinion in

closing arguments that Petitioner destroyed the video-tape of T.B. performing oral sex on him.

Prosecutorial misconduct implicates due process concerns.  *Foy v. Donnelly*, 959 F.2d

1307, 1316 (5th Cir. 1992).  When a petitioner asserts a due process violation, the Court must

determine whether the prosecutorial comments "so infected the trial with unfairness as to make

the resulting conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181

(1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

In federal habeas actions, improper jury argument by the state does not present a claim of

constitutional magnitude unless it is so prejudicial that the petitioner's state court trial was

rendered fundamentally unfair within the meaning of the Fourteenth Amendment's Due Process

Clause.  To establish that a prosecutor's remarks are so inflammatory as to prejudice the

substantial rights of a defendant, the petitioner must demonstrate either persistent and

pronounced misconduct or that the evidence was so insubstantial that, in probability, but for the

remarks no conviction would have occurred.  *Felde v. Blackburn*, 795 F.2d 400, 403 (5th Cir.

1986) (citations omitted).

In this case, the prosecutor stated in closing as follows:

> Well, I wonder why he lost [the first video-tape]?  Maybe because he was making a minor perform oral sex on him?  Don't you think that is why he got rid of it?

(Trial Tr. Vol.  5 at 149.)

An assertion of what the prosecutor believes the evidence shows, however, is not error.

*Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987).  Further, even assuming the remarks were

improper, they were not so prejudicial as to render the trial fundamentally unfair.  *Id.  See also*

*Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (finding that under the harmless error standard

a petitioner must show the alleged error had a substantial and injurious effect or influence in

determining the jury's verdict).  Petitioner's claim is without merit and should be denied.

**5.     Appellate Counsel**

Petitioner claims his appellate counsel was ineffective when he: (1) failed to file an out-

of-time motion for new trial; (2) failed to raise claims of legal and factual insufficiency; (3) failed

to challenge the search and seizure of evidence; and (4) failed to cite cases in his brief.

**A.     New Trial**

Petitioner claims his counsel was ineffective for failing to file an out-of-time motion for

new trial.  It is unclear whether Petitioner is referring to his motion for out-of-time appeal, or his

motion for new trial.  He states the Court of Criminal Appeals granted his motion for new trial

when it actually granted his motion for out-of-time appeal.  In any event, the record shows

appellate counsel filed both a motion for new trial and a motion for out-of-time appeal.  On state

habeas review, appellate counsel submitted an affidavit stating:

Mr. Newport was initially represented by Mr. John Nation, an appellate attorney who was retained to represent him following his conviction in the trial court. I became involved in the case after Mr. Nation failed to file a brief in the Fifth Court of Appeals at a time after Mr. Newport's conviction was affirmed.

I filed a post-conviction Writ of Habeas Corpus alleging ineffective assistance of appellate and trial counsel. The Court of Criminal Appeals ultimately granted Mr. Newport's relief as to the allegation that Mr. Nation provided ineffective assistance of counsel on appeal and denied the claim with respect to the representation by trial counsel. I am confused by the allegations of the writ because they in part allege that I "failed to present Applicant's Out-Of-Time Motion for New Trial, granted by the Court of Criminal Appeals." In fact, the record will reflect that is not the case and that a lengthy hearing was conducted in the trial court on a Motion for New Trial I filed on Mr. Newport's behalf.

*Ex parte Newport*, No. 66,526-07 at 198.

The record shows that Petitioner's motion for out-of-time appeal was granted and his motion for new trial was denied. (*Ex parte Newport*, Nos. 75,847, -848, -849; *Ex parte Newport*, No. 66,526-05 May 19, 2008 Hr'g on Mot. for New Trial.) Petitioner's claim is without merit.

### B.     Legal and Factual Sufficiency

Petitioner claims appellate counsel was ineffective for failing to raise legal and factual insufficiency claims. On state habeas review, counsel submitted an affidavit stating:

I did not raise a factual or legal sufficiency challenge in my brief because, in my professional opinion, neither challenge would have been successful or non-frivolous. While I agree there were inconsistencies in the testimony, I did not believe those inconsistencies were sufficiently substantial to support a factual insufficiency challenge and inconsistent testimony does not provide the basis for a legal sufficiency challenge.

*Ex parte Newport*, No. 66,526-07 at 198.

The record shows that both victims testified Petitioner committed each essential element of the charges. (Trial Tr. Vol. 4 at 12-54; 109-135.) Although Petitioner testified he did not commit the offenses, the jury determined the credibility of the witnesses. Petitioner's claim is without merit.

**Findings, Conclusions and Recommendation**
**of the United States Magistrate Judge**          Page -21-

### C.    Search Warrant

Petitioner claims appellate counsel was ineffective because he failed to argue that items seized during the search of Petitioner's business should have suppressed.  Petitioner states his counsel did not receive a copy of the warrant and supporting affidavit prior to trial, and evidence was seized from Petitioner's brother's portion of the building.  As discussed above, the trial court suppressed the evidence that was seized from Petitioner's brother's section of the building.  Further, counsel did not state he did not have a copy of the warrant or supporting affidavit before trial.  He stated he did not receive a copy of the police inventory and did not know that the prosecutor intended to admit pornographic magazines and other pictures of nude women found during the search.  (Trial Tr. Vol. 4 at 191, 203.)  The trial court excluded this evidence from trial.  (*Id.* at 208.)  Petitioner's claim should be denied.

### D.    Citing Cases

Petitioner claims appellate counsel was ineffective for failing to cite case law for his claim that the trial court erred in denying Petitioner's motion for mistrial after the prosecution bolstered the credibility of a witness.  Petitioner further states his counsel should have argued he was only required to show "some harm" rather than egregious harm because trial counsel timely objected to the statements.  The record shows defense counsel properly cited Texas cases prohibiting the bolstering of witnesses.  (Appellant's Brief at 4-7.)  Further, appellate counsel's brief noted that trial counsel objected to the prosecutor's statements.  (*Id.*)  Finally, Petitioner raised this claim on state habeas review and the Court of Criminal Appeals denied the claim.  *Ex parte Newport,* No. 66,526-07 at 33.  Petitioner has failed to show he suffered constitutionally ineffective assistance of counsel.

6.    **Appellate Court**

Petitioner argues the state appellate court erred in denying his claims.  On direct appeal, Petitioner argued the trial court erred in failing to grant his motions for mistrial when: (1) the prosecutor bolstered the credibility of the victim; (2) the prosecutor commented on the fact that Petitioner's family left the courtroom and did not return during the punishment phase; and (3) Officer Bragg mentioned that Petitioner had charges pending against him in the city of Red Bird. Petitioner also claimed the trial court erred when it admitted evidence of the stolen medical examiner's badge.

"[T]rial judges may declare a mistrial 'whenever, in their opinion, taking all the circumstances into consideration, there is manifest necessity' for doing so." *Renico v. Lett*, 559 U.S. 766, 773-74 (2010) (quoting *United States v. Perez*, 9 Wheat. 579, 580 (1824)). "The decision to declare a mistrial is left to the 'sound discretion' of the judge, but 'the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious cases.'" *Id*. A mistrial is appropriate only when there is a high degree of necessity.  *Id*. at 774.

In this case, Petitioner has failed to show he was entitled to a mistrial.  As discussed above, the trial court excluded testimony that the medical badge was stolen.  (Trial Tr. Vol 4 at 231-32.)  Further, defense counsel objected to Detective Bragg's statement regarding the Red Bird case, the court sustained the objection and instructed the jury to disregard the statement. (*Id*. at 223-24.)  When the prosecutor attempted to bolster the credibility of one of the victims, the trial court sustained the objection and told the jury to disregard the comment.  (Trial Tr. Vol. 5 at 143-144.)  Finally, during the punishment phase the prosecutor commented on the fact that Petitioner's family was not present for the proceedings.  (Trial Tr. Vol. 6 at 75.)  The trial court

sustained defense counsel's objection and instructed the jury to disregard the comment. (*Id.*) Petitioner has failed to establish there was a high degree of necessity to grant a mistrial and that the trial court abused its discretion when it denied Petitioner's motions. Petitioner's claims should be denied.

### 7. Summary

Petitioner is lawfully restrained because he has failed to prove that he has been denied a constitutionally protected interest. Accordingly, the state courts' determination to deny relief is not contrary to or does not involve an unreasonable application of clearly established federal law and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

## RECOMMENDATION

This Court recommends that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be DENIED.

Signed this 28 day of May, 2014.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner

provided by law. Any party who objects to any part of this report and recommendation must file

specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. §

636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific

finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's report and recommendation where the disputed

determination is found. An objection that merely incorporates by reference or refers to the

briefing before the magistrate judge is not specific. Failure to file specific written objections will

bar the aggrieved party from appealing the factual findings and legal conclusions of the

magistrate judge that are accepted or adopted by the district court, except upon grounds of plain

error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).